# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| DARLENE BIESIADECKI,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CONSOL COAL RESOURCES LP, CONSOL COAL RESOURCES GP LLC, JAMES A. BROCK, MARTHA A. WIEGAND, MICHAEL L. GREENWOOD, DEBORAH J. LACKOVIC, KURT R. SALVATORI, DAN D. SANDMAN, JEFFREY L. WALLACE, TRANSFORMER MERGER SUB LLC, TRANSFORMER LP HOLDINGS INC., and CONSOL ENERGY INC.,<br><br>　　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Darlene Biesiadecki ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this action as a unitholder of CONSOL Coal Resources LP ("CCR" or the "Partnership") against CCR's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Partnership to CONSOL Energy Inc. ("CEIX") through its wholly-owned subsidiary Transformer LP Holdings Inc. and its wholly-owned subsidiary Transformer Merger Sub LLC (collectively "CONSOL").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with

1

the United States Securities and Exchange Commission ("SEC") on November 13, 2020.  The S-4 recommends that CCR's unitholders submit a written consent in favor of a proposed transaction (the "Proposed Transaction") whereby CCR is acquired by CONSOL.  The Proposed Transaction was first disclosed on October 23, 2020, when CCR and CONSOL announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which CONSOL will acquire all of the outstanding common units of CCR in exchange for 0.73 shares of CEIX common stock per common unit of CCR (the "Merger Consideration").  The deal is valued at approximately $34.4 million and is expected to close in the first quarter of 2021.

3. The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by CCR management, as well as the financial analyses conducted by Intrepid Partners, LLC ("Intrepid"), CCR's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to CCR's unitholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to CCR's unitholders.  In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of common units of CCR.

6. Defendant CCR is a limited partnership organized and existing under the laws of

the State of Delaware.  The Partnership's principal executive offices are located at 1000 CONSOL Energy Drive, Suite 100, Canonsburg, Pennsylvania 15317.  CCR common units trade on the NYSE under the ticker symbol "CCR."

7. Defendant CONSOL Coal Resources GP LLC is a Delaware limited liability and CCR's general partner.  The directors and officers of CONSOL Coal Resources GP LLC manage CCR, and the officers of CONSOL Coal Resources GP LLC are employed by CEIX.

8. Defendant James A. Brock ("Brock") has been Chief Executive Officer ("CEO") of the Partnership and Chairman of the Board since 2015.  Defendant Brock also serves as CEO, President, and a director of CEIX.

9. Defendant Martha A. Wiegand ("Wiegand") has been General Counsel, Secretary, and a director of the Partnership since 2015.  Weigand also serves as General Counsel of CEIX.

10. Defendant Michael L. Greenwood ("Greenwood") has been a director of the Partnership since 2015.  Defendant Greenwood was a member of the Conflicts Committee formed on August 19, 2020 to consider, negotiate and determine whether to approve the Proposed Transaction (the "Conflicts Committee").

11. Defendant Deborah J. Lackovic ("Lackovic") has been a director of the Partnership since 2017.  Defendant Lackovic serves as the Director of Benefits of CEIX.

12. Defendant Kurt R. Salvatori ("Salvatori") has been a director of the Partnership since 2017.  Defendant Salvatori serves as Chief Administrative Officer of CEIX.

13. Defendant Dan D. Sandman ("Sandman") has been a director of the Partnership since 2017.  Defendant Sandman was a member of the Conflicts Committee.

14. Defendant Jeffrey L. Wallace ("Wallace") has been a director of the Partnership since 2015.  Defendant Wallace was a member of the Conflicts Committee

15. Defendants Brock, Wiegand, Greenwood, Lackovic, Salvatori, Sandman and Wallace are collectively referred to herein as the "Board" or "Individual Defendants."

16. Defendant CEIX is a Delaware corporation with its principal executive offices are located at 1000 CONSOL Energy Drive, Suite 100, Canonsburg, Pennsylvania 15317. CEIX's common stock trades on NYSE under the ticker symbol "CEIX." CEIX is the parent of CONSOL Coal Resources GP LLC and employees the officers of CCR.

17. Defendant Transformer LP Holdings Inc. is a Delaware corporation and is a wholly-owned subsidiary of CEIX.

18. Defendant Transformer Merger Sub LLC is a Delaware limited liability company and is a wholly-owned subsidiary of Transformer LP Holdings Inc.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) CCR is incorporated in this District.

## SUBSTANTIVE ALLEGATIONS

**A. Background of the Partnership and the Proposed Transaction**

22. CCR is a master limited partnership formed to manage and develop its sponsor's coal operations in Pennsylvania. CCR operates the Pennsylvania Mining Complex, and the Partnership is a leading producer of high-British Thermal unit coal in the eastern United States. CEIX separated from CCR's former sponsor on November 28, 2017 and became CCR's sponsor.

23. On October 22, 2020, the Board entered into the Merger Agreement with CONSOL.

24. According to the press release issued on October 23, 2020 announcing the Proposed Transaction:

**CONSOL Energy Inc. to Acquire Remaining Public Stake in CONSOL Coal Resources LP**

- Enhanced financial transparency for equity market and lending community

- Increased market capitalization, public float and trading liquidity

- Improved long-term financial position and credit metrics of combined entity

- Flexibility to further de-lever the balance sheet

- Cost synergies that include elimination of dual public company reporting costs

- Transaction expected to close in Q1 2021

**CANONSBURG, PA (October 23, 2020)** – CONSOL Energy Inc. (NYSE: CEIX) ("CEIX") and CONSOL Coal Resources LP (NYSE: CCR) ("CCR") today announced that they have entered into a definitive merger agreement pursuant to which CEIX will acquire all of the publicly held CCR common units in an all-stock transaction valued at approximately $34.4 million, based on the most recent closing price of shares of CEIX common stock.

Under the merger agreement, CEIX will acquire all of the approximately 10.9 million outstanding CCR common units that it does not already own at a fixed exchange ratio of 0.73 shares of CEIX common stock for each publicly held CCR common unit. This exchange ratio represents a 2.1% premium to the volume

weighted average exchange ratio during the 20 trading days ended October 22, 2020. In aggregate, CEIX will issue approximately 8.0 million shares in connection with the proposed transaction, representing approximately 22.2% of the total CEIX shares that will be outstanding on a pro forma basis.

"We are extremely excited to announce this transaction, as we believe it will provide significant benefits for both CEIX and CCR stakeholders" said Jimmy Brock, President and Chief Executive Officer of CONSOL Energy Inc. "We firmly believe these two companies are a much healthier entity once consolidated than they would be on a standalone basis, regardless of the circumstance. Simplifying the structure will bring immediate benefits to the combined entity such as improving its consolidated credit metrics, creating financial flexibility and eliminating dual public company costs. In the longer term, we expect this transaction will improve the creditworthiness of the combined entity, while also enhancing capital market access and trading liquidity. Finally, this merger accelerates our ability to return capital to our shareholders."

**Additional Transaction Terms and Details**

The transaction terms were negotiated, reviewed and approved by the conflicts committee of the board of directors of CCR's general partner and the board of directors of CCR's general partner. The CCR conflicts committee is composed of the independent members of the board of directors of CCR's general partner. The board of directors of CEIX also approved the merger agreement.

Subject to customary approvals and conditions, the transaction is expected to close in the first quarter of 2021. The transaction is subject to majority approval by CCR's common unitholders, approval by CEIX's stockholders and the effectiveness of a registration statement related to the issuance of the new CEIX shares to CCR's common unitholders. Pursuant to a support agreement entered into in connection with the transaction, CEIX has agreed to vote all of the CCR common units that it owns in favor of the transaction. CEIX currently owns approximately 60.7% of the outstanding CCR common units.

In connection with the closing of the transaction, CCR's common units will cease to be publicly traded and the incentive distribution rights in CCR will be eliminated.

**B. The Materially Incomplete and Misleading S-4**

25.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to CCR's unitholders so that they can make a fully informed decision regarding the Proposed Transaction.

6

26. On November 13, 2020, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Partnership's unitholders with all material information necessary for them to make an informed decision on whether to submit a written consent in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, CCR's unitholders cannot make a fully informed decision concerning whether to submit a written consent in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

27. The S-4 discloses management-prepared financial projections for the Partnership which are materially misleading. The S-4 indicates that, in connection with the rendering of Intrepid's fairness opinion, Intrepid reviewed "certain non-public projected financial data and related assumptions of each of CCR and [CONSOL], as prepared and furnished to Intrepid by management of [CCR's general partner and CONSOL]." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that CCR's management provided to the Board and Intrepid.

28. Notably, defendants failed to disclose whether the financial projections for CCR that were prepared by CONSOL management were the same projections utilized by Intrepid for its financial analyses. For CCR, the S-4 does not disclose unlevered free cash flow, unit-based compensation, legacy liability cash servicing costs, estimated net debt as of December 31, 2020, or the fully diluted units outstanding as of December 31, 2020. For CONSOL, the S-4 does not disclose unlevered free cash flow, stock-based compensation, legacy liability cash servicing costs, estimated net debt as of December 31, 2020, fully diluted shares outstanding as of December 31, 2020, and intercompany receivable from CCR as of December 31, 2020. This omitted information

is necessary for CCR unitholders to make an informed decision on whether to submit a written consent in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning Intrepid's Financial Analyses***

29. With respect to the *Comparable Company Trading Analysis,* the S-4 fails to disclose the objective selection criteria for each company, as well as the multiples for TEV/Adjusted EBITDA (2021E) and TEV/Adjusted EBITDA (2022E) for each selected company. The S-4 also fails to disclose the basis for selecting the reference ranges of 3.75x to 4.25x for TEV/Adjusted EBITDA (2021E) and 3.25x to 3.75x for TEV/Adjusted EBITDA (2022E) for CCR, and the reference ranges of 3.5x to 4.0x for TEV/Adjusted EBITDA (2021E) and 3.0x to 3.5x for TEV/Adjusted EBITDA (2022E) for CONSOL.

30. With respect to the *Discounted Cash Flow Analysis—CCR,* the S-4 fails to disclose whether CCR, CONSOL or Intrepid prepared the forecasted unlevered free cash flow. The S-4 also fails to disclose whether the forecasted unlevered free cash flows were the same as the ones used by CONSOL's financial advisors. Furthermore, the S-4 fails to disclose the basis for selecting the estimated weighted average cost of capital from 13.75% to 17.0%, as well as the range of perpetuity growth rates of -2.0% to 0.0% for terminal values for the unlevered free cash flow and the range of perpetuity growth rates of -1.0% to 1.0% for terminal values for CCR's estimated legacy liability cash servicing. Given CCR's high leverage and beta below 1.0, a weighted average cost of capital below 10% would be expected. It is crucial for unitholders to know Intrepid's justification for using the selected range for weighted average cost of capital.

31. With respect to the *Discounted Cash Flow Analysis—CONSOL,* the S-4 fails to disclose whether CCR, CONSOL or Intrepid prepared the forecasted unlevered free cash flow. The S-4 also fails to disclose whether the forecasted unlevered free cash flows were the same as

the ones used by CONSOL's financial advisors. Furthermore, the S-4 fails to disclose the basis for selecting the estimated weighted average cost of capital from 13.75% to 16.5%, as well as the range of perpetuity growth rates of -2.0% to 0.0% for terminal values for the unlevered free cash flow and the range of perpetuity growth rates of -1.0% to 1.0% for terminal values for CONSOL's estimated legacy liability cash servicing. Given CONSOL's high leverage and beta below 1.0, a weighted average cost of capital below 10% would be expected. It is crucial for unitholders to know Intrepid's justification for using the selected range for weighted average cost of capital.

32. With respect to the *Precedent Premiums Paid Analysis*, the S-4 fails to disclose the premiums for T-1, 10-Day VWAP, 20-Day VWAP, 30-Day VWAP, 60-Day VWAP, and 90-Day VWAP for each selected transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

33. The S-4 also fails to disclose material information concerning the sales process.

34. CONSOL controls CCR. CONSOL owns 16.8 million CCR common units as of November 10, 2020, which is approximately 60.7% of the outstanding common units. CONSOL also owns 100% of the membership interests of CONSOL Coal Resources GP LLC, CCR's general partner. Some of the officers and directors of CCR are also officers or directors of CEIX, and CCR relies on CEIX for the employees to conduct CCR's mining activities. CONSOL's control over CCR made the Proposed Transaction a fait accompli; only the timing was at issue. The S-4 notes that once CONSOL separated from CNX Resources Corporation in November 2017, CONSOL began considering how to combine CONSOL and CCR.

35. On July 29, 2020, CONSOL management informed the Board that CONSOL would be presenting a proposal for a combination of the two companies. The S-4 does not disclose whether any of the members of CONSOL management involved in this discussion were also

officers of CCR. Throughout the process, members of CONSOL management played a critical role. It was CONSOL's management who resumed discussions with CONSOL's legal and financial advisors in June 2020 about a transaction with CCR. It was CONSOL's management who came up with the idea of structing a transaction as the Proposed Transaction—with CONSOL acquiring CCR. It was CONSOL's management who evaluated the rationale for the Proposed Transaction throughout summer of 2020. And it was CONSOL's management who met with the Conflicts Committee and its legal and financial advisors to discuss financial projections and the Proposed Transaction. It is crucial for unitholders to know whether any of the members of CONSOL's management involved in the process were also officers of CCR.

36. The Board formed the Conflicts Committee on August 18, 2020. The S-4 notes that the Conflicts Committee was not authorized to conduct an auction process or otherwise solicit interest from other parties in a potential transaction with the Partnership. The S-4 does not disclose the basis for not providing the Conflicts Committee with such authority, whether the Board discussed providing such authority to the Conflicts Committee, and the role of those directors with a fiduciary relationship to CONSOL in the formation of the Conflicts Committee. For example, Defendant Brock is the President and CEO of CEIX, while Defendant Salvatori is the Chief Administrative Officer of CEIX.

37. CONSOL submitted a preliminary proposal to CCR on August 18, 2020, but that proposal did not include a majority-of-the-minority vote as a condition to the Proposed Transaction. The S-4 does not disclose whether a majority-of-the-minority vote was discussed or considered by the Conflicts Committee, and the basis for not requiring such a vote as a condition for entering into the Merger Agreement.

38. Defendant Wallace contacted Intrepid on August 14, 2020 to discuss engaging Intrepid as the Conflicts Committee's financial advisor. One week later, the Conflicts Committee approved Intrepid's retainer as financial advisor for the Proposed Transaction. The S-4 does not disclose whether the Conflicts Committee met with Intrepid before making this decision, or whether the Conflicts Committee was aware of any potential conflicts of interest before approving its engagement.

39. Intrepid provided a number of financial analyses to the Conflicts Committee throughout the sales process. However, these analyses were not disclosed in the S-4. This includes the preliminary financial analyses related to CONSOL's September 17, 2020 proposal presented to the Conflicts Committee on September 21, 2020; the updated financial analyses presented to the Conflicts Committee on September 30, 2020; the updated financial analyses presented to the Conflicts Committee on October 2, 2020; the financial analyses related to CONSOL's October 7, 2020 proposal presented to the Conflicts Committee on October 8, 2020; the financial analyses related to CONSOL's October 14, 2020 proposal presented to the Conflicts Committee on October 14, 2020; and the financial analyses in connection with CONSOL's second October 20, 2020 proposal presented to the Conflicts Committee on October 20, 2020.

40. The S-4 notes that Intrepid had no material relationship with CONSOL, CCR or their respective affiliates in the two years prior to rendering its fairness opinion. However, the S-4 does not disclose whether there were any other relationships between Intrepid and CONSOL, CCR or their respective affiliates or other services provided by Intrepid to CONSOL, CCR or their respective affiliates for which Intrepid was compensated.

41. This information is necessary to provide the Partnership's unitholders a complete and accurate picture of the sales process and its fairness. Without this information, unitholders

were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Without all material information, CCR's unitholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

42. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

43. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Partnership, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

44. Further, the S-4 indicates that on October 22, 2020, Intrepid reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to CCR unitholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Intrepid's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

45. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Partnership's unitholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Defendants have filed the S-4 with the SEC with the intention of soliciting CCR unitholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

48.     In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of CCR, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

49.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of CCR common units and the financial analyses performed by Intrepid in support of its fairness opinion; and (iii) the sales process.

51. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Intrepid reviewed and discussed its financial analyses with the Board during various meetings including on October 22, 2020, and further states that the Board relied upon Intrepid's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

52. The misrepresentations and omissions in the S-4 are material to Plaintiff, who will be deprived of her right to make an informed decision if such misrepresentations and omissions are not corrected. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of CCR within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CCR and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed

with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

57. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to CCR's unitholders unless and until defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

  Plaintiff demands a trial by jury.

Dated: November 25, 2020         **RIGRODSKY & LONG, P.A.**

               By:   */s/ Gina M. Serra*
                  Seth D. Rigrodsky (#3147)
                  Brian D. Long (#4347)
                  Gina M. Serra (#5387)
**OF COUNSEL:**            300 Delaware Avenue, Suite 1220
                  Wilmington, DE 19801
**ROWLEY LAW PLLC**          Telephone: (302) 295-5310
Shane T. Rowley             Facsimile: (302) 654-7530
Danielle Rowland Lindahl         Email: sdr@rl-legal.com
50 Main Street, Suite 1000         Email: bdl@rl-legal.com
White Plains, NY 10606          Email: gms@rl-legal.com
Telephone: (914) 400-1920
Facsimile: (914) 301-3514          *Attorneys for Plaintiff*